## No. 25-4901

IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

––––––––––––

KRISTI NOEM, *et al.*,
*Defendants-Appellants,*

vs.

NATIONAL TPS ALLIANCE, *et al.*,
*Plaintiffs-Appellees.*

––––––––––––

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA, NO. 3:25-CV-05687-TLT
HONORABLE TRINA L. THOMPSON

––––––––––––

## PETITION FOR REHEARING EN BANC

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493

Ahilan T. Arulanantham (SBN 237841)
*Counsel of Record*
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW
AND POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

*Attorneys for Plaintiffs-Appellees*

Additional Counsel for Plaintiffs-Appellees

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitrán (SBN 302081)
ebitran@aclusocal.org
Diana Sánchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................. 1

ARGUMENT ...................................................................... 5

    I.    THIS CASE PRESENTS QUESTIONS OF EXCEPTIONAL IMPORTANCE ................................ 5

    II.   THE ORDER'S TREATMENT OF THE SUPREME COURT'S STAY ORDERS INDEPENDENTLY WARRANTS EN BANC REVIEW ...................................... 7

    III.  THE PANEL'S ORDER CONFLICTS WITH *NTPSA III* ......................................... 19

CONCLUSION.................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*African Commties. Together v. Noem*,
   No. 25-cv-13939-PBS, --- F. Supp. 3d ---, 2026 WL
   395732 (D. Mass. Feb. 12, 2026) ............................................... 11

*Doe #1 v. Trump*,
   957 F.3d 1050 (9th Cir. 2020) ............................................. 13, 18

*E. Bay Sanctuary Covenant v. Biden*,
   No. 23-16032, 2023 WL 11662094 (9th Cir. Aug. 3,
   2023), *vacated sub nom. E. Bay Sanctuary Covenant
   v. Trump*, 134 F.4th 545 (9th Cir. 2025)................................... 8

*Immigrant Defs. L. Ctr. v. Noem*,
   No. 25-2581, 2025 WL 2017247 (9th Cir. July 18,
   2025) ...................................................................................... 18

*McNary v. Haitian Refugee Ctr., Inc.*,
   498 U.S. 479 (1991) ................................................................. 19

*Mi Familia Vota v. Fontes*,
   111 F.4th 976 (9th Cir. 2024)............................................. 16, 19

*Miller v. Bonta*,
   No. 23-2979, 2023 WL 11229998
   (9th Cir. Oct. 28, 2023)............................................................. 8

*Miot v. Trump*,
   No. 25-cv-02471 (ACR), --- F. Supp. 3d ---,
   2026 WL 266413 (D.D.C. Feb. 2, 2026).................................... 11

*Nat'l TPS All. v. Noem*,
   150 F.4th 1000 (9th Cir. 2005)............................................. 3, 19

*Nat'l TPS All. v. Noem*,
   163 F.4th 1152 (9th Cir. 2025)...........................................*passim*

*Nat'l TPS All. v. Noem,*
No. 25-5724, --- F.4th ---, 2026 WL 226573 (9th Cir.
Jan. 28, 2026) ....................................................................*passim*

*Nat'l TPS All. v. Noem,*
No. 25-cv-05687-TLT, 2025 WL 4058572 (N.D. Cal.
Dec. 31, 2025) ................................................................................ 5

*Noem v. Nat'l TPS All.,*
145 S. Ct. 2728 (2025) ..........................................................10, 15

*Noem v. Nat'l TPS All.,*
606 U.S. ----, 146 S. Ct. 23 (2025)....................................2, 10, 16

*Powers v. McDonough,*
Nos. 24-6338, 24-6576, 24-6603,
24-6888, 2024 WL 6883491 (9th Cir. Nov. 25, 2024)................. 8

*Ramos v. Nielsen,*
709 F. Supp. 3d 871 (N.D. Cal. 2023) ................................... 9, 13

*Ramos v. Wolf,*
975 F.3d 872 (9th Cir. 2020), *reh'g en banc granted,
opinion vacated,* 59 F.4th 1010 (9th Cir. 2023) ......................... 9

*Trump v. Boyle,*
606 U.S. ----, 145 S. Ct. 2653 (2025)........................2-3, 13, 14, 15

*Trump v. Wilcox,*
145 S. Ct. 1415 (2025) ............................................................ 15

*In re U.S. Dep't of Educ.,*
25 F.4th 692 (9th Cir. 2022)................................................... 16

*Wash. v. Trump,*
847 F.3d 1151 (9th Cir. 2017) .............................................13, 18

## Statutes

8 U.S.C. § 1254a(b)(3)(A) ....................................................... 20

8 U.S.C. § 1254a(b)(5)(A) ....................................................19, 21

**Other Authorities**

Erwin Chemerinsky, By the numbers, SCOTUSblog
(July 1, 2025),
https://www.scotusblog.com/2025/07/by-the-
numbers/ ......................................................................... 8

www.census.gov/newsroom/press-
releases/2025/vintage-2024-
popest.html#:~:text=The%20United%20States%20co
ntinues%20to,populations%20of%20100%2C000%20
or%20more ...................................................................... 6

## INTRODUCTION

Plaintiffs seek rehearing en banc from an unpublished stay order that effectively decides the merits of this case in favor of Defendants, even though they lost on summary judgment. Order, *Nat'l TPS All. v. Noem*, No. 26-199, Dkt. 11.1 (Feb. 9, 2026) (hereinafter "Order"). Through limited analysis done on an expedited timeline, the Order allows Defendants to immediately strip 60,000 people of their right to live and work in this country, despite a detailed final judgment from the district court explaining that the agency decision at issue violated the statute in multiple ways. This Court should rehear this case en banc for three reasons.

*First*, the massive harm the Order has visited upon tens of thousands of people and their families warrants en banc review. The individuals harmed by the Order have resided here lawfully for years—most for over a quarter century. By definition they have virtually no criminal history. Most of the harm they face from a stay—including likely detention and deportation—is irreparable, and the Order never suggests otherwise. In contrast,

the only harm Defendants assert is district court intrusion on the executive's chosen course of action; Defendants do not argue the "national interest" or any grave harm requires a stay. The catastrophic harm the Order visited on TPS holders and their families—and the total lack of any cognizable countervailing interest—constitutes a question of exceptional importance.

*Second*, the Order merits en banc review for an entirely unrelated reason arising from two recurring issues of growing significance: how to treat unreasoned stay orders from the Supreme Court in later stay applications, and relatedly, the level of reasoning required of *this* Court to stay a final judgment. Due to the expansion of the Supreme Court's emergency docket, what was once a law-school hypothetical has become a very real problem with extraordinary consequences. There is no published precedent in this Circuit explaining how, if at all, panels considering stay applications should apply prior Supreme Court stay orders that lack any reasoning or traditional analysis of stay factors. While the Supreme Court's *reasoned* stay orders should "inform" future stay litigation, *Trump v. Boyle*, 606 U.S. ----, 145

2

S. Ct. 2653, 2654 (2025), there is no guidance about how to apply *unreasoned* stay decisions to later stay applications in cases involving different subject matter. Relatedly, the rise of unreasoned stay orders from the Supreme Court has been accompanied by this Court's increased use of unreasoned stay orders. But, again, there is no guidance regarding when the tool is permissible and how much analysis is required to stay a detailed decision below, especially one that is final.

This case presents a particularly appropriate vehicle through which to address both questions. The Order contains no reasoning at all on the equities; it simply treats prior unreasoned Supreme Court orders in Defendants' favor as controlling, even though they say *nothing* on the equities and this Court has issued published rulings against Defendants *after* the Supreme Court's stays on which the Order so heavily relies.[1] If nothing more is

---

[1] *See Nat'l TPS All. v. Noem*, 150 F.4th 1000 (9th Cir. 2005) (affirming grant of preliminary relief against Defendants' vacatur and termination of TPS for Venezuela) ("*NTPSA I*"); *Nat'l TPS All. v. Noem*, 163 F.4th 1152, 1157 (9th Cir. 2025) (denying stay of summary judgment order against Defendants on same decisions) ("*NTPSA II*"); *Nat'l TPS All. v. Noem*, No. 25-5724, --- F.4th ---, 2026 WL 226573 (9th Cir. Jan. 28, 2026) (affirming summary

required for a panel to stay a detailed final judgment, then any final district court ruling can be rendered unenforceable until affirmed by this Court, *for no reason*. This should probably never be permissible; but if this Court is inclined to allow it in some circumstances, the applicable rules should be adopted after careful consideration by the en banc Court.

*Finally*, on the jurisdictional questions, where the Order does include some reasoning, that reasoning plainly contravenes this Court's ruling from just a few weeks ago in *NTPSA III*, which held that judicial review remains available for statutory claims challenging TPS decisions. That the Order so clearly conflicts with a recent published decision further justifies en banc review.

---

judgment order as to Venezuela and Haiti) ("*NTPSA III*"). As all three cases concern Venezuela, this brief uses "NTPSA/(Venezuela)" to refer to the litigation challenging the vacatur and termination of TPS for Venezuela as a whole. *See generally Nat'l TPS All. v. Noem*, No. 3:25-cv-1766-EMC (N.D. Cal. filed Feb. 19, 2025).

## ARGUMENT

### I. THIS CASE PRESENTS QUESTIONS OF EXCEPTIONAL IMPORTANCE

This case involves a challenge to Defendants' attempt to terminate Temporary Protected Status for 60,000 long-time lawful residents from Honduras, Nicaragua, and Nepal. The district court ruled the terminations unlawful in violation of the Administrative Procedure Act in a detailed opinion granting partial summary judgment for Plaintiffs and vacating the terminations. *See Nat'l TPS All. v. Noem*, No. 25-cv-05687-TLT, 2025 WL 4058572 (N.D. Cal. Dec. 31, 2025).

The Order stayed that ruling. It thus had the effect of immediately stripping 60,000 people of lawful immigration status. They now face potential detention and deportation, are losing employment (with many losing all regular income almost immediately upon the terminations taking effect), selling businesses built over years, unable to make rent and mortgage payments, losing essential medical care and services for their children, and suffering depression, anxiety, and "terror." Dist. Ct. Dkts. 147 (Decl. of Emilia Garcia), 152 (Decl. of Anil Shahi).

The Order also has catastrophic effects on the nearly 40,000 U.S. citizen children of the TPS holders at issue here. Dist. Ct. Dkt. 168-8 ¶¶ 13, 20, 26 (Decl. of Tom Wong). These American children now face the devastating choice of separating from their families or moving, for the first time, to countries historically deemed too unstable to accept their nationals. And the Order will visit devastating harm on the broader public. *See, e.g.*, Dist. Ct. Dkt. 168-7 (Decl. of Watson & Veuger) (harms to public safety, public health, and the economy). Removing Honduran, Nepali, and Nicaraguan TPS holders from the workforce results in an annual loss to Social Security contributions of over $100 million. Dist. Ct. Dkt. 168-8 ¶¶ 16, 22, 28. The construction, childcare, and restaurant industries are particularly affected. Dist. Ct. Dkt. 168-4 ¶ 17.

These harms constitute an issue of exceptional importance. The affected population is larger than more than 96% of U.S. municipalities.[2] Moreover, although the Order is only an interim

---

[2] www.census.gov/newsroom/press-releases/2025/vintage-2024-popest.html#:~:text=The%20United%20States%20continues%20to,populations%20of%20100%2C000%20or%20more.

ruling, it is functionally final insofar as it authorizes the potential detention and deportation of long-time lawful residents where full appellate review could easily take a year or more. If this Court ultimately affirms the district court's finding that the challenged terminations were unlawful, most of the catastrophic harm caused by permitting them to take effect pending resolution of Defendants' appeal will be irreversible.

## II. THE ORDER'S TREATMENT OF THE SUPREME COURT'S STAY ORDERS INDEPENDENTLY WARRANTS EN BANC REVIEW

En banc review is also warranted for entirely different reasons: to address the Order's treatment of two unreasoned Supreme Court stay orders, and, relatedly, to provide guidance to future panels concerning the degree of analysis this Court should provide when it stays a detailed final judgment from a district court. The Order presents those issues because it gave the Supreme Court's unreasoned stay orders dispositive weight when balancing harms—it expressly declined to weigh the equities because it found the Supreme Court's stay orders from a different case controlling.

7

This Court should go en banc to address the effect of unreasoned Supreme Court stay orders on later stay applications, and to address the conditions under which this Court should issue its own stay orders to delay the entry of judgment and upend the status quo without any articulated justification.[3] These issues are likely to arise with increasing frequency given the Supreme Court's expanded practice of issuing unreasoned stay orders.[4] And the Order's application of the Supreme Court's unreasoned stays is particularly troubling here, both because it conflicts with what this Court already said about one of those Supreme Court stay decisions in *NTPSA II*, and because the Order's logic would permit the government to obtain a stay of virtually any significant

---

[3] *See, e.g.*, *Miller v. Bonta*, No. 23-2979, 2023 WL 11229998, at *1 (9th Cir. Oct. 28, 2023) (unreasoned order staying final judgment); *E. Bay Sanctuary Covenant v. Biden*, No. 23-16032, 2023 WL 11662094, at *1 (9th Cir. Aug. 3, 2023), *vacated sub nom. E. Bay Sanctuary Covenant v. Trump*, 134 F.4th 545 (9th Cir. 2025) (same); *Mayes v. Biden*, No. 22-15518, Dkt. No. 70 (9th Cir. Apr. 5, 2023) (same); *Powers v. McDonough*, Nos. 24-6338, 24-6576, 24-6603, 24-6888, 2024 WL 6883491, at *1 (9th Cir. Nov. 25, 2024) (same).

[4] Erwin Chemerinsky, By the numbers, SCOTUSblog (July 1, 2025) (describing more than doubling of cases decided on the Supreme Court's emergency stay docket), https://www.scotusblog.com/2025/07/by-the-numbers/.

district court order in an immigration case. *First*, en banc review is warranted to address the effect of the Supreme Court's unreasoned stay orders on later stay applications. This case presents a particularly stark example of the problems arising from reliance on the Supreme Court's unreasoned stay orders. Under any traditional assessment of the equities, it would be obvious that the district court's decision should not have been stayed. Indeed, in litigation challenging the termination of TPS for the *exact same population* during the first Trump administration, the government forthrightly conceded that "the balance of equities tips in [Plaintiffs'] favor."[5] In contrast to the catastrophic harms described above, the government has shown no harm from being forced to wait a few months before terminating the legal status of individuals who present no threat. It recently took the position

---

[5] *See* Oral Argument at 1:50, *Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023), https://www.ca9.uscourts.gov/media/video/?20190814/18-16981/. *Ramos* directly involved TPS holders from Nicaragua, and the government entered into a stipulation to preserve TPS for Honduras and Nepal pending a decision in *Ramos*. *See Ramos v. Nielsen*, 709 F. Supp. 3d 871, 878 (N.D. Cal. 2023).

that a district court order preventing the termination of TPS for 350,000 Haitian TPS holders for a few months did *not* justify a stay.[6]

Yet the Order explicitly declined to "evaluate and balance" those equities now, Order at 5, because it believed it was *foreclosed* from conducting normal equitable analysis due to the two unreasoned Supreme Court stay orders from the *NTPSA/(Venezuela)* litigation. *See Noem v. Nat'l TPS All.*, 606 U.S. ----, 146 S. Ct. 23 (2025) ("*Noem II*"); *Noem v. Nat'l TPS All.*, 145 S. Ct. 2728 (2025) ("*Noem I*"). Because that case involved what the Order labeled "similar assertions of harm," Order at 5, it concluded the harm analysis here necessarily favored a stay even though the Supreme Court included no such analysis in its orders even as to Venezuelan TPS holders.

Treating the parties' equities at the high level of abstraction required by the Order's approach represents a drastic alteration of this Court's prior practice assessing stay applications. The

---

[6] *Noem v. Nat'l TPS All.*, No. 25A326, Dkt. 1 (U.S. filed Sept. 19, 2025), Defs.' Stay Appl. at 7 n.6; *Nat'l TPS All. v. Noem*, No. 25-5724, Dkt. 7.1 (9th Cir. Sept. 12, 2025), Defs.' Stay Appl. at 2 n.1.

equities presented here are plainly different from those in
*NTPSA/(Venezuela)*, at least if analyzed as this Court and others
have traditionally done. *See, e.g.*, Order, *Doe v. Noem*, No. 25-2995
(1st Cir. Feb. 17, 2026) (denying stay of district court order
postponing termination of TPS for Syria and distinguishing
*NTPSA/(Venezuela)* stay orders as "involving a TPS designation
of a different country, with different factual circumstances, and
different grounds for resolution by the district court).[7] TPS holders
from Honduras, Nicaragua, and Nepal have been present for a far
longer period—in most cases, more than *twenty-five years*—and

---

[7] In this respect, the Panel's rule also differs from the position of
every district court to consider these issues. None of the numerous
district court TPS cases postdating the stays in
*NTPSA/(Venezuela)* have even suggested the equities presented
by different populations of TPS holders can or should be equated.
*See Miot v. Trump*, No. 25-cv-02471 (ACR), --- F. Supp. 3d ---, 2026
WL 266413, at *38 (D.D.C. Feb. 2, 2026) ("the balance of the
equities favors a stay" of the Haiti termination); *African
Commties. Together v. Noem*, No. 25-cv-13939-PBS, --- F. Supp. 3d
---, 2026 WL 395732, at *14 (D. Mass. Feb. 12, 2026) ("the many
irreparable harms that South Sudanese TPS holders imminently
face … outweigh the largely unsubstantiated concerns raised by
Defendants."); Order, *Doe v. Noem*, No. 25-cv-8686 (S.D.N.Y. Nov.
19, 2025), Dkt. 54 (postponing Syria termination); Memorandum
Opinion and Order at 1–2, 9–20, 25–54, *Doe v. Noem*, No. 25-cv-
15483 (N.D. Ill. Jan. 23, 2026), Dkt. 51 (postponing Burma
termination).

number only a tenth of the population of Venezuelan TPS holders. Moreover, in *NTPSA/(Venezuela),* the government claimed permitting TPS for Venezuela to remain in effect would "undermine the United States' foreign policy, which involves complex negotiations with Venezuela;" "harm the United States 'national security' and 'public safety,'" and "strain[] police stations, city shelters, and aid services in local communities that had reached a breaking point." *Noem v. Nat'l TPS All.*, No. 25A326 (U.S. filed Sept. 19, 2025), Defs.' Stay Appl. at 24). Defendants assert none of those harms here. In addition, unlike *NTPSA/(Venezuela)*, this case is a class action. That difference may well have mattered to the Supreme Court's assessment of the equities in *NTPSA/(Venezuela)* because Defendants sought a stay there in part on the ground that "[t]he district court's universal relief ... prevents the Government from enforcing its policies against nonparties." Defs.' Stay Appl. at 23, *Noem v. Nat'l TPS All.*, No. 25A326 (U.S. Sept. 19, 2025). Indeed, Defendants themselves characterized *NTPSA/(Venezuela)* as "distinguishable" from this case at a prior stage of this litigation.

12

Opp. to Admin. Mot. to Relate 6, *Ramos*, No. 3:18-cv-01554-EMC (N.D. Cal. Jul 8, 2025), Dkt. 266.

In the past, these differences would have at least been considered in any assessment of equities. *See, e.g., Doe #1 v. Trump*, 957 F.3d 1050, 1061 (9th Cir. 2020) (considering specific harms to Plaintiffs, including that Plaintiff risked being separated from his wife following her visa interview); *Wash. v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) (considering specific harms to State employees and students). In contrast, under the Order's approach they are immaterial. En banc review is warranted to address whether such cursory analysis suffices to stay implementation of a detailed final judgment through application of unreasoned stays issued by the Supreme Court.

*Second*, the Order's approach conflicts with this Court's treatment of unreasoned Supreme Court stay orders in other contexts. The Order viewed its conclusion as required by *Trump v. Boyle*, in which the Supreme Court stated its "interim orders ... inform how a court should exercise its equitable discretion in like cases." 145 S. Ct. at 2654 (cited in Order at 5). On the Order's

13

approach, because the Supreme Court had (presumably) determined that the government's interest in the Venezuela TPS case outweighed the interests of Venezuelan TPS holders, this Court is bound to conclusively presume the same as to TPS holders from Honduras, Nicaragua, and Nepal as well—despite substantial differences between the two populations.

However, that is not how a different panel of this Court understood *Boyle* in the *NTPSA/(Venezuela)* litigation itself. In *NTPSA II*, 163 F.4th at 1157, this Court denied the government's request for a stay of the district court's summary judgment order setting aside the vacatur and termination of TPS for Venezuela. The Court held the Supreme Court's earlier stay in the *NTPSA/(Venezuela)* litigation did *not* control its decision. *NTPSA II* also cited *Boyle*, but read it to require this Court to treat the Supreme Court's stay decisions to "'inform [the] exercise [of] equitable discretion in like cases" only "through *analysis*," and it found such analysis "lacking" in the first *NTPSA/(Venezuela)* stay order. *NTPSA II*, 163 F.4th at 1157 (emphasis added) (citing *Boyle*, 145 S. Ct. at 2654). *NTPSA II* took that approach because

14

*Boyle* concerned the effect of a prior stay order that contained substantive analysis as to why equitable factors warranted a stay. *See Boyle*, 145 S. Ct. at 2654 (citing *Trump v. Wilcox*, 145 S. Ct. 1415 (2025)). In that sense it was fundamentally different from the stay orders in *NTPSA/(Venezuela). NTPSA II*, 163 F.4th at 1157 (quoting *Wilcox*, 145 S. Ct. at 1415); *see also Wilcox*, 145 S. Ct. at 1415 ("the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation" justified a stay); *id.* (distinguishing other officers from Federal Reserve officials).

Here, as the Order acknowledges, the Supreme Court stay orders on which it relies "contain[] no reasoning;" Order at 5, but it nonetheless finds them controlling. The May 19 *NTPSA/(Venezuela)* stay order is two paragraphs long. It does not mention, let alone analyze, any equitable factors, nor does it explain why the Court concluded that a stay was warranted. *Noem I*, 145 S. Ct. 2728. Similarly, the October 3 *NTPSA/(Venezuela)* stay order provides no analysis of equities. It says only that "the parties' legal arguments and relative harms …

15

have not" changed, so "[t]he same result that we reached in May is appropriate here." *Noem II*, 146 S. Ct. at 24.

Conflict of this kind warrants en banc review whether or not the judges of this Court ultimately agree with the approach taken in *NTPSA II* or instead that taken in the Order. *NTPSA II* held that the Supreme Court's unreasoned stay orders simply cannot be applied to other cases, or even the same case at a different stage of the litigation, because this Court "can only guess as to the [Supreme] Court's rationale when it provides none." *NTPSA II*, 163 F.4th at 1158. In contrast, the Order here not only applies these unreasoned stay orders, but treats them as *controlling* in a different case after final judgment. Similarly inconsistent decisions from stay panels will recur with increasing frequency unless this Court establishes rules for how to approach such situations.[8]

---

[8] *See, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th 692, 702 (9th Cir. 2022) (recognizing lack of "guidance on how to apply [a Supreme Court] decision" which was "unreasoned"); *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024) (vacating an emergency stay on reconsideration upon finding that the "motions panel's order failed to provide a reasoned analysis of the *Nken* factors").

*Third*, the Order's approach—accepting the Supreme Court's unreasoned stay order as controlling the equitable analysis in any case involving "similar assertions of harm," Order at 5—would permit the government to obtain a stay of any loss it sustains in a large immigration case, rendering district courts effectively powerless to impose the rule of law in this context. On the Order's approach, cases that call for balancing the government's interest in "carry[ing] out its preferred immigration policy" against plaintiffs' interests in avoiding "deportation, loss of employment or health benefits, and family separation," do not require this Court to "make [its] own assessment" of harms and the public interest. Order at 4–5. Instead, because the Supreme Court has stayed orders in cases involving the same *general* types of harms, this Court must do the same. *Id* at 5.

Granting a stay whenever the government's only assertion of harm is its inability to carry out its preferred immigration policy would represent a sharp break with this Court's prior practice on its stay docket. It has long been this Court's rule that the harm that arises whenever the government cannot pursue its preferred

17

immigration policy is "not irreparable" because the government "may yet pursue and vindicate its interests in the full course of this litigation." *Wash.*, 847 F.3d at 1168 (internal quotation marks and citations removed); *see also Immigrant Defs. L. Ctr. v. Noem*, No. 25-2581, 2025 WL 2017247, at *5 (9th Cir. July 18, 2025) ("It is well established that the mere existence of the Executive Branch's desire to enact a policy is not sufficient to satisfy the irreparable harm prong."). As this Court has explained, "if we were to adopt the government's assertion that the irreparable harm standard is satisfied by the fact of executive action alone, no act of the executive branch asserted to be inconsistent with a legislative enactment could be the subject of a preliminary injunction. That cannot be so." *Doe #1 v. Trump*, 957 F.3d at 1059.

*Finally*, the Order is the latest example of a growing trend in this Court, where panels issue unreasoned stays of final district court decisions. *See* n.3, *supra*. En banc review is warranted to determine if and when stay orders are ever permissible to upend a

final judgment and upset the status quo without any articulated

justification.[9]

## III. THE PANEL'S ORDER CONFLICTS WITH *NTPSA III*

Finally, en banc review is warranted even as to the portion

of the Order that does contain more (albeit still limited) reasoning,

because its jurisdictional analysis squarely conflicts with this

Court's holding from just a few weeks ago in *NTPSA III*, 2026 WL

226573, at *8 (applying *McNary v. Haitian Refugee Ctr., Inc.*, 498

U.S. 479 (1991)). *NTPSA III* rejected the government's argument

that the jurisdictional bar in 8 U.S.C. § 1254a(b)(5)(A) bars review

of "any 'decision'" related to a TPS extension or termination.

*NTPSA III*, 2026 WL 226573, at *8. Under *NTPSA III*, jurisdiction

remains to review "claim[s] that the Secretary exceeded her

statutory authority," and "questions of statutory interpretation."

*See id.; see also NTPSA I*, 150 F.4th at 1017 ("first order

question[s]" concerning the Secretary's authority are reviewable).

The Order reached precisely the opposite conclusion

(concededly as a preliminary matter), holding it was likely to find

---

[9] *See Mi Familia Vota*, n.8, *supra*, 111 F.4th at 981.

no jurisdiction over Plaintiffs' statutory claims because "the Secretary's action is unreviewable because it is a 'determination ... with respect to the ... termination ... of a designation[] of a foreign state.'" Order at 4. The Order's jurisdictional holding thus directly conflicts with *NTPSA III*. The district court entered judgment for Plaintiffs on three distinct claims, two of which were plainly "questions of statutory interpretation." First, the court held the Secretary exceeded her statutory authority by terminating TPS without "consult[ing] with appropriate agencies of the Government," as required by 8 U.S.C. § 1254a(b)(3)(A). Second, the court held the Secretary misinterpreted the statute's rules governing what country conditions she must review when making TPS decisions. She concluded the TPS statute required her to consider only a country's recovery from the crisis that triggered its *initial* designation, and that she was barred from considering *intervening* crises, no matter how grave. Both of these claims concern the validity of the Secretary's interpretation of the TPS statute, so they are clearly reviewable under *NTPSA III*. Yet the

20

Order found Plaintiffs unlikely to succeed on their claim that the

court had jurisdiction over them.

To make matters worse, while failing to apply *NTPSA III*'s

rule, the Order adopted an interpretation of Section 1254a(b)(5)(A)

that *NTPSA III* expressly rejected. The Order held Plaintiffs'

claims likely unreviewable because the termination decision they

challenge "is a 'determination ... with respect to the ... termination

... of a designation[] of a foreign state.'" Order at 4 (citing 8 U.S.C.

§ 1254a(b)(5)(A)). Thus, on the Order's approach *any* decision

concerning a TPS termination is unreviewable, because the

statute provides the Secretary authority to issue a termination.

*Id.* That is precisely the interpretation *NTPSA III* rejected. 2026

WL 226573, at *9 (rejecting government's argument that "any

"decision" related to a TPS designation, extension, or termination

by the Secretary is entirely unreviewable"). As *NTPSA III*

explained, under the government's (and now the Order's)

expansive interpretation, "if a Secretary decided to sell TPS

designations, that decision would be unreviewable … because that

action could be characterized as a decision about a TPS

designation." *Id. NTPSA III* concluded that such an expansive view of the review bar is inconsistent with the TPS statute's purpose to "constrain executive authority," *id.*, but the Order endorses that same view.

The Order described its holding as consistent with *NTPSA III* on the ground that *NTPSA III* concerned a TPS *vacatur*, rather than a termination. While that distinction undoubtedly matters for the merits, as the term "vacatur" appears nowhere in the TPS statute, it is irrelevant for jurisdictional purposes, and in any event is not the line *NTPSA III* drew. Rather, it held this Court has jurisdiction to review "claim[s] that the Secretary exceeded her statutory authority" and "questions of statutory interpretation." 2026 WL 226573, at *8. Plaintiffs clearly raise at least two such claims.

## CONCLUSION

For these reasons, the Court should grant rehearing en banc. It should also order the Parties to file supplemental briefs concerning the conditions under which this Court should rely on

unreasoned Supreme Court stay orders to issue unreasoned stays of final district court judgments.

Dated: February 23, 2026      Respectfully submitted,

By: */s/ Ahilan T. Arulanantham*
    Ahilan T. Arulanantham (SBN 237841)
    *Counsel of Record*
    arulanantham@law.ucla.edu
    CENTER FOR IMMIGRATION LAW AND
    POLICY, UCLA SCHOOL OF LAW
    385 Charles E. Young Dr. East
    Los Angeles, CA 90095
    Telephone: (310) 825-1029

    Emilou MacLean (SBN 319071)
    emaclean@aclunc.org
    Michelle (Minju) Y. Cho (SBN 321939)
    mcho@aclunc.org
    Amanda Young (SBN 359753)
    ayoung@aclunc.org
    ACLU FOUNDATION
    OF NORTHERN CALIFORNIA
    39 Drumm Street
    San Francisco, CA 94111-4805
    Telephone: (415) 621-2493

    Jessica Karp Bansal (SBN 277347)
    jessica@ndlon.org
    Lauren Michel Wilfong
    lwilfong@ndlon.org
    NATIONAL DAY LABORER
    ORGANIZING NETWORK
    1030 S. Arroyo Parkway, Suite 106
    Pasadena, CA 91105
    Telephone: (626) 214-5689

Eva L. Bitrán (SBN 302081)
ebitran@aclusocal.org
Diana Sánchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, 1H
San Diego, CA 92120
Telephone: (949) 603-7411

*Attorneys for Plaintiffs-Appellees*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with Circuit Rule 40-1 because it contains 4,172 words, including words manually counted in any visual images, and excluding the parts of the document exempted by Rules 27(a)(2)(B) and 32(f) of the Federal Rules of Appellate Procedure. The brief also complies with the typeface and typestyle requirements of Rules 32(a)(5)–(6) of the Federal Rules of Appellate Procedure because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: February 23, 2026          Respectfully submitted,

By: */s/ Ahilan T. Arulanantham*
Ahilan T. Arulanantham